MAY 19, 1987

No. 86–6919 (A–842). JOHNSON v. CABANA, ACTING COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS. C. A. 5th Cir. Application for stay of execution of sentence of death, presented to JUSTICE WHITE, and by him referred to the Court, denied. Certiorari denied.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976), I would grant the application for stay of execution and the petition for certiorari, and would vacate the death sentence in this case.

Even if I did not take this view, I would still grant the application for a stay and the petition for certiorari. Petitioner raises a substantial claim that, since trial, he has become incompetent and therefore may not be executed. In *Ford* v. *Wainwright*, 477 U. S. 399 (1986), the Court held that the Eighth Amendment bars execution of convicted prisoners found to be incompetent. The Court rested its holding on the lack of "retributive value [in] executing a person who has no comprehension of why he has been singled out and stripped of his fundamental right to life." *Id.*, at 409. The Court also relied on "the natural abhorrence civilized societies feel at killing one who has no capacity to come to grips with his own conscience or deity." *Ibid.* In a concurring opinion, JUSTICE POWELL stated:

> "If the defendant perceives the connection between his crime and his punishment, the retributive goal of the criminal law is satisfied. And only if the defendant is aware that his death is approaching can he prepare himself for his passing. Accordingly, I would hold that the Eighth Amendment forbids the execution only of those who are unaware of the pun-

ishment they are about to suffer and why they are to suffer it." *Id.*, at 422.

Petitioner's claim is founded on an affidavit by a licensed clinical psychologist stating his findings as to petitioner's sanity. Following a 5-hour evaluation of petitioner, and after a review of petitioner's medical records and of statements by others acquainted with petitioner, the affiant concluded:

> "Edward Johnson is unable to relate any punishment through execution to his own conduct, or the conduct alleged against him. He does not understand why he is being singled out, and does not have the proper mental framework to come to grips with his own conscience. It is quite clear that this is the product of mental disease or defect." App. to Pet. for Cert. D 2.

The plausibility of this conclusion is buttressed by the affidavit of a psychiatrist, who evaluated petitioner prior to his trial. That evaluation "revealed substantial mental defects," and the affiant diagnosed that petitioner had "suffered from brain dysfunction" from birth, and "suffered from [an] organic brain syndrome" that intermittently caused personality and behavioral changes. He concluded "that [petitioner's] mental problems were severe." *Id.*, at E 1–2.

Petitioner first presented this evidence to the Mississippi Supreme Court pursuant to the State's postconviction procedures set forth in Miss. Stat. Ann. § 99–19–57(2)(b) (Supp. 1987). In response, the State submitted affidavits that disputed petitioner's claims. The Mississippi Supreme Court did not hold a hearing in this matter, nor did it even consider the affidavits presented by the State. Instead, the court simply concluded, without explanation, that it did "not find it necessary to consider [the State's affidavits] because [petitioner] failed to make out a prima facie case of present insanity by his affidavits." *Johnson* v. *State*, 508 So. 2d 1126, 1127 (1987). The court summarily held that petitioner's evidence was insufficient standing alone to raise "a reasonable probability" that petitioner is presently "insane." *Ibid.*

The Constitution does not require an indigent prisoner to produce more than what petitioner has in order to meet the burden of coming forward. There is nothing amiss, at least facially, in petitioner's affidavits. The affidavits were prepared by licensed professionals, not by family members or friends. Cf. *Evans* v.

*McCotter*, 805 F. 2d 1210, 1212–1213 (CA5 1986) (affidavit of insanity by prisoner's sister does not raise legitimate question of sanity). They are based on comprehensive evaluations of petitioner. If true, they reveal an individual who, because of mental defect, is "unaware of the punishment [he is] about to suffer and why [he is] to suffer it." *Ford*, 477 U. S., at 422 (concurring opinion). Yet this individual, according to the Mississippi Supreme Court, has not raised even a prima facie *Ford* claim sufficient to warrant *consideration* of the State's response. If unchallenged affidavits by licensed professionals, concluding that a condemned man "is unable to relate any punishment through execution to his own conduct," are insufficient to raise a *prima facie* case that he is incompetent under *Ford*, then it is hard to imagine what would.*

As applied by the Mississippi Supreme Court, the State's procedures for evaluating the competency of those on death row are inconsistent with *Ford*, and with the minimum requirements of due process when the constitutionality of an execution is at stake. It is true that, in *Ford*, we "left to the State the task of developing appropriate ways" to ensure that the incompetent would never be executed. We also acknowledged that "it may be that some high threshold showing on behalf of the prisoner will be found a necessary means to control the number of nonmeritorious or repetitive claims of insanity." *Id.*, at 417. But we left no doubt that the "overriding dual imperative" in devising procedures to comply with *Ford* was to ensure "redress for those with substantial claims and [to] encourag[e] accuracy in the factfinding determination." *Ibid.* Mississippi's procedures appear utterly inconsistent with this imperative.

Because the precedent set below threatens to undermine the practical effectiveness of our holding in *Ford*, I would grant the stay and the petition to consider the constitutionality of Mississippi's procedures for ensuring that its death sentencing system comports with the constitutional obligations identified in *Ford*.

---

*I am at a loss to guess what extensive showing the State might require of an indigent defendant before it would grant a hearing.